UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIAN WEARREN, | ) | Case No. CV 18-9637-JGB (JPR) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION OF U.S.** |
| v. | ) | **MAGISTRATE JUDGE** |
| | ) | |
| JOSEPH A. GOFFERMAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This Report and Recommendation is submitted to the Honorable Jesus G. Bernal, U.S. District Judge, under 28 U.S.C. § 636 and General Order 05-07 of the U.S. District Court for the Central District of California.  For the reasons discussed below, the undersigned recommends that the Court DENY Defendant's motion for summary judgment.

## PROCEEDINGS

Plaintiff, a state prisoner proceeding pro se, filed a civil-rights Complaint on November 15, 2018, and was granted leave to proceed in forma pauperis.  His claims arise from his being accused by Defendant correctional officer of writing an

1

anonymous note — or "kite"[1] — reporting an altercation involving two other prisoners.

On October 18, 2020, Plaintiff filed the operative Second Amended Complaint, suing California Men's Colony correctional officers Joseph A. Gofferman and Daniel P. Soto in their individual capacity for allegedly violating his First and Eighth amendment rights.  Defendants moved to partially dismiss the SAC, and on October 14, 2021, the Court granted the motion in part — dismissing all claims against Soto — and ordered Gofferman to file an answer to the SAC's remaining First and Eighth amendment claims against him.  He did so on November 10, 2021.

On June 15, 2023, Defendant moved for summary judgment, Plaintiff opposed on July 10, and Defendant replied on July 20.[2]

**STANDARD OF REVIEW**

The Court must grant summary judgment if the papers "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" only if a sufficient evidentiary basis exists on which a reasonable jury could find

---

[1] "Kite" is prison slang for a written communication by a prisoner.  See Paigly v. Frauenheim, No. 15-cv-05162-HSG (PR), 2017 WL 2986244, at *5 (N.D. Cal. July 13, 2017).

[2] In his Reply, Defendant asks the Court not to consider Plaintiff's Opposition because it was four days late, but he does not explain how the delay has prejudiced him. (Reply, Mem. P. & A., ECF No. 127 at 5.) In light of Plaintiff's pro se status, the Court DENIES Defendant's request and considers the merits of the Opposition.  See Brayton Purcell LLP v. Recordon & Recordon, 487 F. Supp. 2d 1124, 1127 (N.D. Cal. 2007) ("in the interests of justice," court considered merits of opposition when it was "filed only a few days late" and moving party suffered no prejudice).

for the nonmoving party.  Scott v. Harris, 550 U.S. 372, 380
(2007) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 586-87 (1986)).  A factual dispute is "material"
only if it might affect the outcome of the lawsuit under
governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).

The moving party must present the basis of its motion and
identify portions of the record which together with declarations
it believes show the absence of a genuine issue of material fact.
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Once the
moving party meets that requirement, the burden shifts to the
opposing party to demonstrate with specific facts, not mere
conclusory allegations, the existence of a genuine issue of
material fact.  See Anderson, 477 U.S. at 248-50, 256; Taylor v.
List, 880 F.2d 1040, 1045 (9th Cir. 1989).  The opposing party
"must do more than simply show that there is some metaphysical
doubt as to the material facts."  Scott, 550 U.S. at 380 (citing
Matsushita, 475 U.S. at 586).  Thus, summary judgment is
appropriate if the nonmoving party "fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden
of proof at trial."  Celotex, 477 U.S. at 322.

The Court's function is "not 'to weigh the evidence and
determine the truth of the matter'" but rather, after drawing all
inferences in the light most favorable to the nonmoving party, to
evaluate whether any genuine issue remains to be tried.  Tolan v.
Cotton, 572 U.S. 650, 656 (2014) (per curiam) (quoting Anderson,
477 U.S. at 249); see also Bonivert v. City of Clarkston, 883

3

1  F.3d 865, 880 (9th Cir. 2018) (at summary-judgment stage, court

2  should not weigh "conflicting evidence with respect to disputed

3  material facts" (alteration omitted) (citing T.W. Elec. Serv.,

4  Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

5  1987))); cf. In re Coordinated Pretrial Proc. in Petroleum Prods.

6  Antitrust Litig., 906 F.2d 432, 441 (9th Cir. 1990) (noting that

7  at summary-judgment stage, court is not required to adopt

8  unreasonable inferences from circumstantial evidence); Richards

9  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1247 (E.D. Cal.

10 1985) ("[I]nferences are not drawn out of thin air, but from

11 evidence."), aff'd, 810 F.2d 898 (9th Cir. 1987).  The Court may

12 but is not required to consider materials in the record not cited

13 by the parties.  Fed. R. Civ. P. 56(c)(3).

14                    **PLAINTIFF'S REMAINING CLAIMS**

15       The remaining claims in the SAC are as follows:

16       1) Defendant violated the Eighth Amendment by publicly

17 accusing Plaintiff of having written a kite concerning a fight

18 between two other prisoners.  (See SAC, ECF No. 52 at 31-33.)

19       2) Defendant violated the First Amendment by transferring

20 Plaintiff to a less desirable dorm in retaliation for his

21 protected speech.  (See id. at 29-31.)

22       Plaintiff seeks one dollar in "nominal damages," punitive

23 damages, declaratory relief, and recovery of costs.  (Id. at 63.)

24                      **STATEMENT OF FACTS**

25 **I.   Undisputed Material Facts**

26       Plaintiff was incarcerated at California Men's Colony State

27 Prison in San Luis Obispo at all relevant times.  (Opp'n Mot.

28 Summ. J., Statement of Genuine Issues of Material Facts in

                                4

Dispute, ECF No. 126 at 24.)  On May 3, 2017, Defendant obtained and informally investigated the subject and origin of an anonymous kite that had been placed in the Dorm 4 mailbox.  (Id.) The kite reported a fight between Hispanic prisoners living in Dorm 4, Plaintiff's dorm.  (See id.)  Defendant interviewed a prisoner named in the kite; informed prisoner Walter Portillo, the Men's Advisory Council representative for Dorm 4, of the kite; and told Portillo that he would find out who wrote it. (See id. at 24-25.)  Defendant searched all prisoners' lockers in Dorm 4 for a handwriting sample to compare with the kite but confiscated only Plaintiff's notebook.  (See id. at 25.)  Another prisoner told Plaintiff, who wasn't present at the time, about the search and confiscation.  (See id.)  Portillo announced to Dorm 4 that Defendant had received the kite and would deal with its author on his return from his days off.  (See id.)

On May 6, 2017, Plaintiff entered the Dorm 4 office, did not close the door, and discussed his confiscated notebook with Defendant.  (See id. at 25-26.)  Plaintiff raised his voice. (See id.)  Defendant told Plaintiff that he knew Plaintiff had authored the kite "based on his comparison of the handwriting" in Plaintiff's notebook with the kite, and Plaintiff admitted the handwriting looked "identical."  (Id. at 26.)  Prisoner Charles Landry, who worked as the Dorm 4 porter, entered the office to get cleaning supplies, and the discussion continued in front of him.  (See id.)  Shortly thereafter, Defendant called Plaintiff back into the office to tell him that he would be moving to Dorm 9.  (See id. at 27.)  Plaintiff returned to his bunk to pack, and prisoners approached and told him that they had heard about

Defendant's accusation. (Id.)  He then returned to the office and told Defendant that his "actions were dangerous" and that he wanted to talk to the lieutenant. (Id. at 27-28.)  Several times, Defendant asked if Plaintiff was refusing to move, and Plaintiff denied that but asked to speak with the lieutenant, and he did not leave the office. (See id. at 28.)  Defendant radioed for support, and another officer handcuffed Plaintiff and walked him across the yard to a holding cell. (See id.)  While there, nondefendant prison staff "forced" Plaintiff to sign a "chrono"[3] stating that he had no safety concerns, which allowed him to be released back into the general population rather than administrative segregation. (Id.)  Plaintiff returned to Dorm 4, packed, and moved to Dorm 9. (See id.)

Because of Defendant's actions, Plaintiff had to "defend [himself] daily against verbal attacks and ward off physical assault" "for several weeks." (Id. (alteration in original).) But he never submitted any claim of physical injury related to an assault based on the accusation. (See id. at 29.)

## II. **Disputed Material Facts**

Plaintiff disputes Defendant's professed beliefs that (1) Portillo would not tell other prisoners about the note (see id. at 24-27 & Ex. A, Portillo Decl., at 34), (2) accusing Plaintiff in front of Landry would not present a threat (see, e.g., id., Ex. C, Haslip Decl., at 42), (3) Landry would not repeat the

---

[3]  Plaintiff likely refers to form CDCR 128-B. See Heilman v. Furster, No. CV 15-9987 JVS (FFM), 2018 WL 2588900, at *10 (C.D. Cal. May 1, 2018) ("CDCR 128-B general chrono is used to document information about inmate behavior"), accepted by 2018 WL 2472891 (C.D. Cal. May 31, 2018).

accusation (see id.), (4) other prisoners had not overheard the
discussion (see, e.g., Mot. Summ. J., Buller Decl., Ex. A, Pl.'s
Dep., ECF No. 124-2 at 23; SAC, Batchelor Decl., ECF No. 52 at
71), and (5) the prison population would not become aware of the
accusation (see, e.g., Opp'n Mot. Summ. J., Ex. B, Newman Decl.,
ECF No. 126 at 37).

The parties disagree about whether the SAC alleges physical
harm or injury to Plaintiff resulting from Defendant's conduct.
(See Opp'n Mot. Summ. J., Statement of Genuine Issues of Material
Facts in Dispute, ECF No. 126 at 28.)  Nevertheless, Defendant
concedes that Plaintiff testified during his deposition that he
was assaulted by two Black prisoners who sought to exact
punishment on him to avoid issues with Hispanic prisoners
following Defendant's "snitch" accusation.  (See id. at 29; see
also Mot. Summ. J., Buller Decl., Ex. A, Pl.'s Dep., ECF No. 124-
2 at 62.)

Defendant contends that he never called Plaintiff a
"snitch," but Plaintiff counters that accusing him in front of
other prisoners of "dropping a kite" "most certainly" labeled him
a "snitch."  (Opp'n Mot. Summ. J., Statement of Genuine Issues of
Material Facts in Dispute, ECF No. 126 at 29; see also id., Ex.
B, Newman Decl., at 38; id., Ex. C, Haslip Decl., at 42; id., Ex.
D, Hayes Decl., at 47;  Reply, ECF No. 127-2 at 13.)

Plaintiff contests Defendant's claim that he was moved to
another dorm for raising his voice at a correctional officer,
stating that Defendant said in the office that he was moving
Plaintiff because "he could" and because he thought Plaintiff had
written the kite.  (See Opp'n Mot. Summ. J., Statement of Genuine

1  Issues of Material Facts in Dispute, ECF No. 126 at 27, 29-30;

2  see also Mot. Summ. J., Buller Decl., Ex. A, Pl.'s Dep., ECF No.

3  124-2 at 52, 57.)  He also notes that the reason given on the

4  "bed assignment" form for Plaintiff's move was "compaction"

5  (Opp'n Mot. Summ. J., Statement of Genuine Issues of Material

6  Facts in Dispute, ECF No. 126 at 14; see also id., Ex. G at 56),[4]

7  nothing to do with safety or security.

8       Finally, Plaintiff claims that Defendant denied him his

9  right to protest the accusation about authoring the kite (see

10  Opp'n Mot. Summ. J., Statement of Genuine Issues of Material

11  Facts in Dispute, ECF No. 126 at 30-31), and Defendant counters

12  that that cause of action was dismissed (see Reply, ECF No. 127-2

13  at 13 (citing Order, ECF No. 70)).

14                        **DISCUSSION**

15       Defendant has not shown lack of a genuine dispute of

16  material fact so as to entitle him to judgment as a matter of law

17  on any of the remaining claims against him, as discussed below.

18  **I.   Genuine Disputes of Material Fact Remain on the Eighth**

19       **Amendment Deliberate-Indifference Claim**

20       **A.   Applicable Law**

21       Prison officials are constitutionally required to take

22  reasonable measures to guarantee the safety of prisoners and have

23  a duty to protect them from harm.  See Farmer v. Brennan, 511

24  U.S. 825, 832-34 (1994).  Not every injury, however, "translates

25

26  ─────────────

27       [4] Cell compaction apparently involves putting more prisoners
    together in a cell "due to funding and overcrowding issues."
28  Carter v. Munoz, No. 1:07-cv-01736-SMS PC., 2010 WL 2196003, at *7
    (E.D. Cal. May 26, 2010).

into constitutional liability for prison officials responsible for the victim's safety." Id. at 834.  To state a claim for an Eighth Amendment violation, the prisoner must show that the deprivation alleged was objectively "sufficiently serious," in that the prisoner was "incarcerated under conditions posing a substantial risk of serious harm" and the defendant had a "sufficiently culpable state of mind," namely, "deliberate indifference" to the prisoner's health or safety.  Id. (citations omitted).  To adequately allege deliberate indifference, a plaintiff must set forth facts showing that a defendant knew of but disregarded an excessive risk to prisoner safety.  Id. at 837.  Specifically, the plaintiff must show that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that he actually drew that inference.  Id.

Allegations that prison officials called a prisoner a "snitch" in the presence of other prisoners may if true violate the prisoner's right to be protected from violence while in custody.  See Valandingham v. Bojorquez, 866 F.2d 1135, 1137-39 (9th Cir. 1989); cf. Wilkinson v. Austin, 545 U.S. 209, 227 (2005) ("Testifying against, or otherwise informing on, [prison] gang activities can invite one's own death sentence.").  In such cases, a plaintiff must "allege that he has been assaulted or threatened with an assault by other prisoners."  Williams v. Wood, 223 F. App'x 670, 671 (9th Cir. 2007).  "[S]peculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm."  Id.

**B.   Analysis**

1.   <u>Some Evidence Shows that Defendant Effectively Labeled Plaintiff a Snitch</u>

Defendant contends that he did not endanger Plaintiff because he never expressly called him a "snitch."  (<u>See</u> Mot. Summ. J., Mem. P. & A., ECF No. 124-1 at 15.)  But "snitch" isn't the only label that could jeopardize the safety of a prisoner.  <u>Cf.</u> <u>Douglas v. Oregonian Publ'g Co.</u>, 465 F. App'x 714, 714-15 (9th Cir. 2012) (§ 1983 case using "snitch" and "informant" synonymously); <u>Joy v. King</u>, No. 2:19-CV-2474-DMC-P, 2021 WL 1103074, at *1-2 (E.D. Cal. Mar. 23, 2021) (§ 1983 case using being an "informant," "drop[ping a] kite," and "snitching" synonymously).  Indeed, the Court's role at the summary-judgment phase is to draw all inferences in the light most favorable to the nonmoving party.  <u>Tolan</u>, 572 U.S. at 656.

Plaintiff has provided evidence that Defendant endangered him because accusing him of authoring a kite about a fight effectively labeled him a snitch.  <u>See</u> <u>Valandingham</u>, 866 F.2d at 1137-39; <u>Gonzales v. Cal. Dep't of Corr.</u>, 739 F.3d 1226, 1235 (9th Cir. 2014) (holding that "risk of retaliation from other gang members . . . inheres in becoming an 'informant'"); <u>Dumbrique v. Brunner</u>, No. 14-cv-02598-HSG, 2016 WL 3268875, at *13 (N.D. Cal. June 15, 2016) (denying summary judgment on Eighth Amendment claim when guards labeled plaintiff "debriefer" and testimony showed that "code of prison gangs requires the gangs to assault or kill debriefers"); (<u>see also</u> Opp'n Mot. Summ. J., Ex. B, Newman Decl., ECF No. 126 at 38 ("labeling someone a 'snitch' or accusing someone of 'dropping a kite' which is the same thing,

is an extremely dangerous accusation to place on anyone"); id.,
Ex. C, Haslip Decl., at 41 ("Gofferman's accusation against
[Plaintiff] that labeled him a 'snitch,' caused a dangerous
situation on echo yard and placed [his] life in danger" and
"placed a lot of people[']s lives in danger because it created a
riot situation"); id., Ex. D, Hayes Decl., at 47 ("inmate who is
identified by the police as a person who 'dropped a kite' is
considered a 'snitch' or 'informant'" and "inmates as well as
prison employees are aware of the danger that comes with the
label of 'snitch' and informant'"")).  Defendant himself has
acknowledged that prisoners who are "perceived as providing
information that was unfavorable" to another prisoner could be
"targeted for assault, extortion, or other predatory conduct" in
prison (Opp'n Pl.'s Mot. Compel, ECF No. 99 at 9 (citation
omitted)), thereby undermining his argument.

     Thus, even if Defendant never directly called Plaintiff a
"snitch," Defendant is not entitled to judgment as a matter of
law because some evidence exists that he endangered Plaintiff by
accusing him in front of at least one other prisoner of informing
on other prisoners.  See Valandingham, 866 F.2d at 1137-39; see
also Gonzales, 739 F.3d at 1235; Dumbrique, 2016 WL 3268875, at
*13.

               2.   Reasonable Inferences Exist that Defendant Had the
                    Required Subjective Knowledge

     Defendant argues that he did not know that any prisoners
would spread his accusation and contends that Plaintiff cannot
prove otherwise.  (See Mot. Summ. J., Mem. P. & A., ECF No. 124-1
at 17.)  But Defendant cannot "take refuge in the zone between

                                11

'ignorance of obvious risks' and 'actual knowledge of risks'"
because the Supreme Court has held that "knowledge of a
substantial risk is a question of fact" and "a factfinder may
conclude that a prison official knew of a substantial risk from
the very fact that the risk was obvious." <u>Farmer</u>, 511 U.S. at
842 (citations omitted). "If an inmate presents evidence of very
obvious and blatant circumstances indicating that the prison
official knew the risk existed, then it is proper to infer that
the official must have known of the risk." <u>Foster v. Runnels</u>,
554 F.3d 807, 814 (9th Cir. 2009) (cleaned up) (citing <u>Simmons v.
Cook</u>, 154 F.3d 805, 807 (8th Cir. 1998)).

Defendant declares that he "did not believe that the [sic]
Portillo would go and tell the rest of the inmates at CMC about
[their] conversation regarding the note" (Mot. Summ. J.,
Gofferman Decl., ECF No. 124-3 at 2), "believed" that continuing
his conversation with Plaintiff in front of Landry "would not
present a threat to Plaintiff" (<u>id.</u> at 3), "did not believe that
inmate Landry would repeat the accusation as Landry and Plaintiff
were both African American" (<u>id.</u>), and "didn't believe the prison
population would be aware of any accusation that Plaintiff was
the author of the note" (<u>id.</u>).  Plaintiff has challenged these
assertions with numerous declarations from prisoners.  For
example, Portillo avers that Defendant "never once told" him that
their conversation was "private" or "not to tell anyone," and he
"felt [Defendant] wanted [him] to speak out as the dorm MAC rep."
(Opp'n Mot. Summ. J., Ex. A, Portillo Decl., ECF No. 126 at 34.)[5]

---

[5] Indeed, prison policy undermines Defendant's alleged belief
that Portillo would refrain from spreading the information because

12

As to Defendant's continuing the discussion in front of
Landry because he and Plaintiff were both Black, "it does not
matter what your ethnicity is, when you are labeled a 'snitch' it
is believed you will inform on anyone." (Id., Ex. C, Haslip
Decl., at 42.)  Another fellow prisoner "was in total disbelief
than an officer would accuse any inmate of 'dropping a kite' in
front of another inmate" — apparently regardless of race.  (Id.,
Ex. D., Hayes Decl., at 46.)  Defendant admits he accused
Plaintiff in front of Landry, and the "act of labeling [a]
prisoner a snitch" is one of the "examples where [the] Ninth
Circuit has found knowledge of [the] 'very obviousness of the
risk' imputable to prison officials."  Warren v. Gastelo, No.
2:20-cv-3572-DOC (SK), 2023 WL 2052184, at *5 (C.D. Cal. Jan. 11,
2023) (denying summary judgment on Eighth Amendment claim)
(citation omitted), accepted by 2023 WL 20161932 (C.D. Cal. Feb.
16, 2023); see also Henry v. Chapa, No. 1:07-CV-00336-DGC., 2009
WL 1748697, at *2 (E.D. Cal. June 19, 2009) (denying summary
judgment on deliberate-indifference claim because court couldn't
"say as a matter of law that a reasonable jury could not find
that Defendant knew of and disregarded a substantial risk to
Plaintiff's health or safety based on the obviousness of the
threat to inmate safety posed by labeling an inmate as a

---

an express purpose of having a prisoner advisory-council
representative like Portillo "is to provide the Warden and their
administrative staff a vehicle to communicate . . . with general
inmate population."  Cal. Dep't of Corr. & Rehab., Operations
Manual, ch. 3, art. 38, para. 53120.2, at 437 (2023),
https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/
2023/05/2023-DOM.pdf.

snitch").[6]

And as to the prison population's awareness of the accusation, "word that [Defendant] had accused [Plaintiff] of 'dropping a kite' spread throughout the yard immediately." (Opp'n Mot. Summ. J., Ex. B, Newman Decl., ECF No. 126 at 37; see also Mot. Summ. J., Buller Decl., Ex. A, Pl.'s Dep., ECF No. 124-2 at 54 (Plaintiff testifying "that is wildfire" when asked how other prisoners learned of accusation).

Defendant claims that Plaintiff can't show that Defendant — as opposed to other prisoners — caused him harm because "Portillo made his announcement after Plaintiff was the only individual with a note book taken" (Mot. Summ. J., Mem. P. & A., ECF No. 124-1 at 18), thereby alerting the prison population that Defendant believed Plaintiff was the informant.  Thus, Defendant argues, by the time he and Plaintiff had their heated discussion in his office in front of Landry, the other prisoners already knew about the accusation.  But Portillo could only have made his announcement after Defendant placed Plaintiff at risk by sharing confidential investigative information with him, and Defendant's mere confiscation of the notebook by itself would not have alerted other prisoners that a "snitch kite" even existed.  See Timberland v. Mascarenas, 1:16-cv-00922-LJO-GSA-PC, 2018 WL

_____

[6] Plaintiff contends that other prisoners outside the office door also heard Defendant's accusation and that Defendant knew they were there and might be able to hear.  (See Mot. Summ. J., Buller Decl., Ex. A, Pl.'s Dep., ECF No. 124-2 at 23, 35.)  Defendant claims he wasn't aware of their presence.  (Mot. Summ. J., Gofferman Decl., ECF No. 124-3 at 3.)  Regardless, Defendant's acknowledged accusation in front of Landry is enough to raise a genuine dispute of material fact concerning his knowledge.

1  4350066, at *7-8 (E.D. Cal. Sept. 10, 2018) (finding that
2  plaintiff "alleged sufficient facts that . . . would demonstrate
3  to a jury that he was genuinely at substantial risk of serious
4  harm because defendant . . . made . . . available to other
5  inmates" "confidential personal information" "effectively
6  labeling [him] a 'snitch' or 'rat'"), accepted by 2018 WL 4951904
7  (E.D. Cal. Oct. 12, 2018); (see also Mot. Compel, Ex. B, Diaz-
8  Acosta Decl., ECF No. 86 at 19 (CDCR employee averring that
9  "exposing confidential information about the nature of
10  investigations to the inmate population" "would create a safety
11  and security risk to the institution"), 20 (prisoners' knowledge
12  of others' "cooperation [with officers] jeopardizes the safety
13  and security of the inmate witnesses")).

14      Finally, the record contains no "reasonable justification
15  for exposing [Plaintiff] to the risk." Lemire v. Cal. Dep't of
16  Corr. & Rehab., 726 F.3d 1062, 1078 (9th Cir. 2013) (citing
17  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010)). Because
18  Defendant's main contention is that he didn't know anyone would
19  spread the accusation, he hasn't even tried to show
20  justification for exposing Plaintiff to the risk that resulted.
21  See Fierro v. Ryan, No. CV 13-02173-PHX-PGR (BSB), 2017 WL
22  11685447, at *9-13 (D. Ariz. Jan. 17, 2017) (denying summary
23  judgment on Eighth Amendment claim when question of fact existed
24  concerning defendants' reasonable justification for exposing
25  plaintiff to risk of harm), aff'd, 731 F. App'x 652 (9th Cir.
26  2018).

27      Because subjective "inquiries are fact-intensive and
28  typically should not be resolved at the summary judgment stage,"

and because genuine disputes of material fact remain, Defendant is not entitled to summary judgment.  Lemire, 726 F.3d at 1078.

        3.   Some Evidence Suggests that Plaintiff Was Injured by Defendant's Actions

Defendant claims that the SAC alleges no physical harm or injury (Mot. Summ. J., Def.'s Statement of Uncontroverted Facts, ECF No. 124-4 at 6), but as he acknowledges elsewhere, an Eighth Amendment violation may exist when a prisoner is "assaulted or threatened by other prisoners" (Mot. Summ. J., Mem. P. & A., ECF No. 124-1 at 19 (emphasis added) (citing Morgan v. MacDonald, 41 F.3d 1291, 1294 (9th Cir. 1994))), and the SAC certainly includes allegations of threats resulting from Defendant's accusation (see SAC, ECF No. 52 at 55-59).

In any event, Plaintiff has presented evidence — including his own deposition testimony — that he was actually beaten and disciplined by Black prisoners as a result of Defendant's accusation against him.  (Opp'n Mot. Summ. J., Statement of Genuine Issues of Material Facts in Dispute, ECF No. 126 at 28 (citing Mot. Summ. J., Buller Decl., Ex. A, Pl.'s Dep., ECF No. 124-2 at 42).)  And several prisoners attested to Plaintiff's injuries.  (See Opp'n Mot. Summ. J., Ex. B, Newman Decl., ECF No. 126 at 37 (noting that Plaintiff was "in a fight with another inmate" on day he moved into Dorm 9 and "was disciplined in the black inmates television room" "couple of weeks later"); id., Ex. C, Haslip Decl., at 41 (observing that one "could hear" assault from basketball court and Plaintiff's "face was very red, and his forehead had knots on it" afterward); id. Ex. D, Hayes Decl., at 46 (observing that Plaintiff had "small welt under his eye and

scratches on his neck" from "fight the day he moved into Dorm 9").)

Defendant contends that "Plaintiff's own sworn testimony clearly states no injury occurred." (Reply, ECF No. 127-2 at 10.) But he misstates the facts because the portions of the deposition he cites concern whether Plaintiff was "claiming" physical injury as a separate cause of action resulting in damages (Mot. Summ. J., Buller Decl., Ex. A, Pl.'s Dep., ECF No. 124-2 at 9, 69), not whether it occurred at all. Plaintiff testified about his physical injuries (see id. at 62 (detailing discipline consisting of "[b]lows to the body" resulting in "bruises and scratches")) and has not attempted to "create an issue of fact by contradicting [his] own deposition testimony," as Defendant asserts (see Reply, ECF No. 127-2 at 10). And Plaintiff presented evidence that he could not seek medical attention because that would only have intensified other prisoners' perception of him as a snitch. (See Opp'n Mot. Summ. J., Ex. C, Haslip Decl., ECF No. 126 at 41 (noting that Plaintiff "could not go to medical . . . because that would be viewed as 'dry-snitching,' which would cause a whole host of more issues").)[7]

Defendant contends that Plaintiff "has set forth no evidence establishing" that Defendant's "conduct was the proximate cause

---

[7] To "dry snitch" apparently means to snitch on someone indirectly, for example, by talking in an excessively loud voice. See, e.g., Andrew Medal, "13 Prison Slang Terms You Should Use with Co-Workers," Entrepreneur (Feb. 15, 2019), https://www.entrepreneur.com/growing-a-business/13-prison-slang-terms-you-should-use-with-co-workers/328191.

of any alleged injury." (Mot. Summ. J., Mem. P. & A., ECF No. 124-1 at 20.) This argument is unavailing because "plaintiffs who have already demonstrated a triable issue of fact as to whether prison officials exposed them to a substantial risk of harm, and who actually suffered precisely the type of harm that was foreseen, will also typically be able to demonstrate a triable issue of fact as to causation." Lemire, 726 F.3d at 1080-81. And Plaintiff has established triable issues of fact about Defendant's creation of danger, as discussed above.

In sum, Defendant is not entitled to summary judgment on Plaintiff's Eighth Amendment claim.

**II.  Genuine Disputes of Material Fact Remain on the First Amendment Retaliation Claim**

**A.  Applicable Law**

To state a claim for First Amendment retaliation, a prisoner must allege that "(1) a state actor took some adverse action against him (2) because of (3) his protected conduct, and that such action (4) chilled his exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Entler v. Gregoire, 872 F.3d 1031, 1040 (9th Cir. 2017) (alterations omitted) (citing Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (as amended)). The "chilling" inquiry is governed by an objective standard, and "the infliction of harms other than a total chilling effect can [also] establish liability" for retaliatory conduct. Rhodes, 408 F.3d at 569. A plaintiff bears the burden of pleading the absence of a legitimate correctional goal, see Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995), such as "the preservation of

internal order and discipline, maintenance of institutional
security, and rehabilitation of prisoners," <u>Rizzo v. Dawson</u>, 778
F.2d 527, 532 (9th Cir. 1985).  A plaintiff successfully pleads
this element by alleging that the defendant's actions were
"arbitrary and capricious," <u>id.</u>, or "unnecessary to the
maintenance of order in the institution," <u>Franklin v. Murphy</u>, 745
F.2d 1221, 1230 (9th Cir. 1984), <u>abrogated on other grounds by</u>
<u>Neitzke v. Williams</u>, 490 U.S. 319, 324 & n.3 (1989).

   **B.   Analysis**

   Plaintiff claims that by transferring him to a less
desirable dorm, Defendant retaliated against him for protesting
the accusation about authoring the kite.  (<u>See</u> Opp'n Mot. Summ.
J., Statement of Genuine Issues of Material Facts in Dispute, ECF
No. 126 at 29-30.)  Defendant somewhat confusingly contends that
that cause of action was dismissed (<u>see</u> Reply, ECF No. 127-2 at
13) even though he moved for summary judgment claiming the dorm
transfer advanced legitimate correctional goals (Mot. Summ. J.,
Mem. P. & A., ECF No. 124-1 at 11-14).  To clarify, the Court
previously dismissed Plaintiff's retaliation claims concerning
being handcuffed and detained but not about the allegedly
retaliatory dorm transfer.  (<u>See</u> Order, ECF No. 70.)

   In any event, Defendant is not entitled to summary judgment.
He seemingly argues that the transfer was not adverse because
Dorm 9 "had the same privileges" as Dorm 4 and "identical
accommodations besides the number of inmates housed."  (Mot.
Summ. J., Mem. P. & A., ECF No. 124-1 at 13.)  But in support of
this argument that any changes were de minimis, he cites cases
about a prisoner being told to leave the prison kitchen on one

occasion, a job assignment conflicting with a day of law-library access, and denial of a single meal (see id. at 13-14), none of which approach the numerous "honor dorm" privileges involved here — more phone calls, fewer searches and "troublemakers," substantially less crowded facilities, and better access to showers and television rooms — that Plaintiff alleges and the Court previously identified (see R. & R., ECF No. 68 at 19-20). He also conclusorily asserts that Plaintiff failed "to show that a person of ordinary firmness would have been silenced by [Defendant's] action." (Mot. Summ. J., Mem. P. & A., ECF No. 124-1 at 12.)  He then claims that his "goal of investigating the note and determining the resolution of the issue served a legitimate correctional goal of ensuring the overall safety of the dorm."  (See id. at 13.)  But knowingly sharing confidential investigative information with Portillo and Landry — and possibly other prisoners as well — may actually have jeopardized institutional safety, as discussed above.

Defendant also contends that because Plaintiff indisputably raised his voice during their office discussion (see Opp'n Mot. Summ. J., Statement of Genuine Issues of Material Facts in Dispute ECF No. 126 at 27), transferring him to another dorm served a legitimate correctional goal (see Mot. Summ. J., Mem. P. & A., ECF No. 124-1 at 13).  But Plaintiff points out that evidence exists that Defendant's after-the-fact justification may be pretextual because the reason given on the "bed assignment" form for his move was "compaction," not anything having to do with safety or security.  (Opp'n Mot. Summ. J., Statement of Genuine Issues of Material Facts in Dispute, ECF No. 126 at 14;

see also id., Ex. G, at 56.)  Plaintiff also raises a genuine issue of material fact by citing to his deposition testimony that Defendant said in the office that he was moving Plaintiff because "he could" and because he thought Plaintiff had written the kite. (See Mot. Summ. J., Buller Decl., Ex. A, Pl.'s Dep., ECF No. 124-2 at 52 (testifying that Defendant said, "Because I can"), 57 (same)); see also Clinton v. Green, No. CV 08-4180-DOC (OP)., 2014 WL 2931176, at *7 (C.D. Cal. Apr. 22, 2014) (denying summary judgment on retaliation claim because plaintiff's deposition testimony raised genuine issue of material fact as to defendant's motive), accepted by 2014 WL 2931178 (C.D. Cal. June 24, 2014).

In sum, Defendant hasn't shown the absence of a genuine issue of material fact, as required for summary judgment on Plaintiff's First Amendment claim.  See Celotex, 477 U.S. at 322-23.

**RECOMMENDATION**

For all these reasons, IT IS RECOMMENDED that the District Judge accept this Report and Recommendation and deny Defendant's motion for summary judgment.

DATED: December 7, 2023

JEAN ROSENBLUTH
U.S. MAGISTRATE JUDGE